The order below is hereby signed.

Signed: May 9 2022



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | |
| **Ronald Lee Gage,**<br>**Debtor,** | **Case No. 13-00689-ELG**<br>**Chapter 7** |
| In re: | |
| **Meredith Lynn Alexander,**<br>**Debtor.** | **Case No. 17-00490-ELG**<br>**Chapter 7** |

## COMBINED MEMORANDUM OPINION AND ORDER ON
## APPLICATIONS FOR FINAL COMPENSATION BY ATTORNEY FOR TRUSTEE

Before the Court are two applications (the "Applications") for final compensation filed by William D. White, chapter 7 trustee (the "Trustee") for services rendered in the chapter 7 cases of Ronald Lee Gage, 13-00689-ELG[1] (the "Gage Application") and Meredith Lynn Alexander, 17-00490-ELG (the "Alexander Application") on behalf of his law firm, McCarthy & White, PLLC ("McCarthy & White"), as counsel for the Trustee contained as part of the *Trustee's Final Report* in each case at 13-00689-ELG ECF No. 37 and 17-00490-ELG ECF No. 49 (the "Gage TFR" and the "Alexander TFR," respectively). In each of these chapter 7 cases, after an independent review of the Applications, the Court issued an *Order and Notice of Hearing on Application for Final*

---

[1] These cases were reassigned to in September 2020 to Judge Gunn following her appointment and the retirement of her predecessor.

*Compensation by Attorney* (13-00689-ELG ECF No. 42 (the "First Gage Order"); 17-00490-ELG

No. 52 (the "First Alexander Order"), collectively, the "Hearing Orders"). The Hearing Orders

raised substantially identical detailed concerns as to the actual and necessary nature of the services

for which compensation was sought in each of the Applications and set a hearing thereon for

November 4, 2021 (the "Hearing"). Neither the Trustee nor McCarthy & White (collectively, the

"Applicants") filed written responses to the Hearing Orders prior to the Hearing, but the Court did

permit the Applicants to file post-hearing memoranda. Due to the substantially similar nature of

the legal issues presented by the Applications, the Court hereby issues a combined Memorandum

Opinion and for the reasons set forth herein, grants in part and denies in part the Applications.

## I.    Background

### a.  The Gage Case[2]

On October 13, 2013, Ronald L. Gage, by counsel, commenced his case by filing a

voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(the "Bankruptcy Code").[3] With his petition, Mr. Gage filed a complete set of statements and

schedules that disclosed a "[p]otential claim for faulty hip prosthesis, Attorney: Susan Minkin,

Ashcraft & Gerel" (the "Gage PI Claim"). Gage Pet. at 12 (Schedule B), Gage ECF No. 1. Mr.

Gage did not claim any type of exemption in the Gage PI Claim in his original Schedule C. Gage

Pet. at 14 (Schedule C), Gage ECF No. 1. The Gage PI Claim was part of Mr. Gage's bankruptcy

estate for administration by the Trustee for the benefit of creditors. *Id.* at 14-15. Mr. Gage's original

§ 341(a) meeting of creditors was scheduled for December 5, 2013, continued twice, and

concluded on January 30, 2014. Gage ECF No. 9. Mr. Gage received his chapter 7 discharge on

---

[2] All ECF references in Case No. 13-00689 (the "Gage Case") shall be referred to as "Gage ECF."

[3] All section references herein are to the Bankruptcy Code unless specifically stated otherwise.

February 4, 2014. Gage ECF No. 14. More than a month later, on March 20, 2014 the Trustee filed a *Notice of Possible Dividends*. Gage ECF No. 19.

Mr. Gage's case then case sat dormant on the Court's docket for more than two years, until, on March 25, 2016, the Trustee filed an *Application to Employ* (Gage ECF No. 28) "himself and his law firm" as counsel. In the Application to Employ, the basis for the Trustee's need for representation was a generic statement that "[t]he Trustee requires the services of an attorney to assist in analysis and liquidation of assets and to represent the Trustee in any other legal issues which may arise during the administration of the bankruptcy estate." Appl. Employ at ¶ 3, Gage ECF No. 28. On April 11, 2016, the Court entered an order granting the Application to Employ. Gage ECF No. 29. Then, once again, the case went dormant.

Almost four years after approval of the Application to Employ, on January 15, 2020, Mr. Gage filed a modified Schedule C claiming, for the first time, two exemptions in the Gage PI Claim – $12,681 pursuant to § 522(d)(5) and $22,975 pursuant to § 522(a)(11)(D) – for a total exempt amount of $35,656. Gage ECF No. 31. Six weeks later, the Trustee, by himself as counsel, filed a *Motion to Approve Compromise* (Gage ECF No. 32) requesting court approval of the estate's participation in a proposed multi-district litigation (the "MDL") settlement regarding the Gage PI Claim on the terms and conditions reached in the MDL settlement. From a review of the Motion to Compromise, it appears that Mr. Gage continued to be represented in the MDL by the same law firm as disclosed on his Schedule B (the "Ashcraft Firm") and not by the Trustee or his court-appointed counsel and law firm McCarthy & White. Mot. Approve Compromise, Gage ECF No. 32. Notably, despite the Ashcraft Firm's continued representation and the estate's interest in the MDL proceedings, the Trustee in both his role as trustee and as counsel to the Trustee failed to file an application to employ the Ashcraft Firm to represent the estate's interest in the MDL.

Nevertheless, the Ashcraft Firm represented Mr. Gage (and, therefore, the estate) until such time as a settlement offer was proposed in the MDL. The MDL settlement, if approved, was to provide a <u>net</u> benefit to Mr. Gage and the bankruptcy estate of $55,971.37 after payment to the Ashcraft Firm of a 40 percent contingency fee, direct costs, and share of common benefits costs.[4]

On February 28, 2020, the Trustee, again as counsel for himself, filed a *Motion to Approve Compromise* (Gage ECF No. 32) (the "Gage Settlement Motion") and *Notice of Proposed Compromise and of Opportunity to Object* (Gage ECF No. 33) (the "Gage Settlement Notice") seeking approval of Mr. Gage's portion of the MDL settlement (the "MDL Settlement"). The Gage Settlement Motion does not set forth any details regarding the proposed settlement, instead incorporating by reference the statements and arguments made in the Gage Settlement Notice. The Gage Settlement Notice, for the first time, disclosed details regarding the PI Claim and, also for the first time, raised a potential objection to Mr. Gage's amended exemptions. Indeed, the Gage Settlement Motion references only court approval of the MDL Settlement. The Gage Settlement Notice also included a request to settle a possible exemption objection with Mr. Gage to divide the net proceeds as follows: $30,000.00 to Mr. Gage and the balance of $25,971.37[5] to the estate. In other words, the Gage Settlement Motion, by implied incorporation by reference to the Gage Settlement Notice, sought the approval of (i) the estate's participation in the overarching MDL Settlement, (ii) the agreed distribution between Mr. Gage's exemptions and the bankruptcy estate,

---

[4] The Court notes that there has been no issue raised to the value and extent of the Ashcraft Firm's services or results in this case. The Court also acknowledges that the timing/lack of employment application cannot be relitigated due to the doctrine of res judicata, however, this information is necessary to evaluate the value McCarthy & White provided to the estate as counsel to the trustee.

[5] The Gage Settlement Notice incorrectly detailed that the bankruptcy estate would receive $26,321.37, but the Order granted the appropriate number and found the difference inconsequential. *See* Gage ECF Nos. 32 and 34.

and (iii) tacitly, the employment of and payment of fees to the Ashcraft Firm as counsel for the estate in the MDL litigation[6] as required by the Bankruptcy Code.

On March 25, 2020, after expiration of the notice period on the Gage Settlement Motion, and without objection or hearing, the Court entered its *Order Granting Motion to Approve Compromise* (Gage ECF No. 34) (the "Order Approving Compromise"), which approved the $100,000 MDL Settlement, the disbursement to the Ashcraft Firm of their contingency fee (and tacitly the employment thereof to represent the estate), Mr. Gage's $30,000 compromised exemption in the MDL Settlement and distribution thereof, and the payment of the balance to the Trustee on behalf of the estate. Order Approving Compromise, Gage ECF No. 34. After entry of the Order Approving Compromise, nothing further happened this case until May 27, 2021 (14 months later), when the Gage TFR, including the application for compensation for the Trustee and the Gage Application were filed. Gage ECF Nos. 37, 38, and 39. On May 28, 2021, the Trustee filed *Supporting Exhibits to the Gage Application* (ECF No. 38) and a *Notice of the Gage TFR* (Gage ECF No. 39). No objections to the Gage TFR were filed and the Trustee submitted a proposed order to the Court for entry. An application for approval of the Trustee's statutory commission is also included in the Gage TFR but is not at issue in this Memorandum Opinion.[7]

The Gage TFR discloses that the Trustee received a total of $100,000.00 into the estate and made the following disbursements pursuant to the Order Approving Compromise: $44,028.63 to the Ashcraft Firm, $30,000.00 to Mr. Gage as exempt funds, and the balance to the Trustee who

---

[6] The Gage Settlement Notice settlement characterizes the Ashcraft Firm as the "Debtor's litigation counsel," but as noted previously, upon the filing of the Petition and until the Gage PI Claim was either (i) properly exempted by the Debtor or (ii) abandoned by the Trustee, it remained property of the Debtor's estate and not property of the Debtor. 11 U.S.C. § 541(a).

[7] In the Gage Application, the Trustee requests a total compensation of $6,750 based upon $70,000 disbursed (net of the Debtor's exemption) and $131.82 in expenses. Gage ECF No. 37; 11 U.S.C. § 326(a).

held it over the next eleven months until the filing of the Gage TFR. As of the filing of the Gage TFR, there remained approximately $25,340.14 in the Trustee's account at Mechanics Bank. The Gage Application seeks payment of $12,400.00 in fees and expenses to McCarthy and White, reduced from $19,146.00 "to permit distribution to priority claim." Gage Appl., ECF No. 37. Following distribution of the Trustee's commission and expenses, this leaves approximately $6,058.32 for distribution to the Debtor's priority creditor, the Internal Revenue Service towards its $29,050.00 priority claim (Claim No. 1).

On October 1, 2021, after an independent review of the Gage TFR, Gage Application, and supporting documentation, the Court the First Gage Order, which outlined the Court's concerns with the Gage Application and set a hearing thereon for November 4, 2021. Despite the legal questions raised in the First Gage Order, the Trustee did not file a written response to the order, instead appearing at the Hearing and offering solely legal argument and no further evidence other than his statements of opinion to the Court. No further evidence as to the scope, necessity, or appropriateness of the services was offered by the Trustee. Nor did the Trustee address any specific line item or task performed. At the conclusion of the Hearing, the Court provided the Trustee with additional time to file a brief and/or evidence in support of the compensation requested in the Gage Application. On December 8, 2021, the Trustee filed his *Support Document* (Gage ECF No. 49), which once again addressed the issues of compensation for trustee's counsel in general, but did not address or otherwise provide any specific justification, evidence, or further detail(s) as to the time entries in the Gage Application. Thus, in considering whether to approve the time requested in the Gage Application, the only evidence the Court has as to the appropriateness of the time expended are the invoices attached as the exhibits to the Gage Application and the docket of Mr. Gage's case.

### i.    The Gage Application

Prior to entry of the Court's First Gage Order, McCarthy & White, as counsel for the Trustee, only filed two pleadings in this case – the Gage Settlement Motion and Gage Settlement Notice. The Court approved the settlement without objection or hearing through an order prepared by the Trustee and in which the Court corrected what was deemed to be an immaterial error. There is no evidence before the Court that the Trustee or McCarthy & White represented the interests of Mr. Gage, the estate in the MDL, or provided any other services to the estate other than obtaining approval of the settlement. Despite this relatively limited scope of service, the Trustee seeks approval of compensation for McCarthy & White in the amount of $19,146, though indicates that the firm will "accept" $12,400 in satisfaction of the services.

At all times, Mr. Gage and the estate were represented by the Ashcroft Firm in the MDL for which the firm obtained payment of over $40,000 in fees as "litigation counsel" on a contingency basis. There is also no question that the only asset in this case is the net proceeds from the MDL Settlement. In the Gage Application, McCarthy & White requests approval of compensation for services to the estate in the following categories: a) Monitoring of Important Events in the [MDL]; b) Assessment of the Settlement Proposed in the [MDL]; c) Analysis of Limits of Exemption and Negotiations with Gage; and d) Approval of Compromise and Implementing of Order. Gage Appl., Gage ECF No. 37; Supp. Doc. to Gage Appl., Gage ECF No 38. While the Gage Application describes the services rendered, it does not set forth how the services were "actual, necessary services" to the estate by an attorney as required by § 330(a)(1), nor the legal basis upon which the compensation should be approved. If the fees are approved as requested, the only distributions in this case will be to the Trustee, McCarthy & White, and an approximately 20 percent distribution on an otherwise nondischargeable claim of the Internal

Revenue Service. Therefore, Mr. Gage's remaining liability on the priority claim, and thus the diminution of his fresh start, is directly increased by the amounts paid to counsel for the Trustee.[8]

The exhibits to the Trustee's Gage Application contain fifty time entries for which McCarthy & White seeks payment for services rendered by the Trustee in his capacity as his own attorney.[9] Gage Appl., Gage ECF No. 37. These time entries are detailed in Attachment Appendix A hereto, which includes the original information included in the Gage Application. Of the fifty entries, forty-seven entries and part of another entry are for time associated with reviewing emails from the Ashcraft firm regarding the MDL, communication with the Ashcraft firm regarding the MDL's impact on Mr. Gage's bankruptcy case, and the review of issues related to standing and exemptions. *See* Exs. to Appl. for Approval of Final Att'y Fees, Gage ECF No. 38. As more fully set forth in Attachment Appendix B, each of these forty-seven and a part time entries contain descriptions and services which clearly fall under the statutorily required duties of a chapter 7 trustee.

**b. The Alexander Case[10]**

On August 29, 2017, Marilyn Lynn Alexander, by counsel, commenced her bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. The Trustee was appointed chapter 7 trustee for Ms. Alexander's case. Ms. Alexander's § 341(a) meeting of creditors was held and concluded on October 5, 2017 and she received her chapter 7 discharge on

---

[8] Further, the Trustee's delay in filing the Gage TFR resulted in monthly bank fees from July 2020 through April 2021 of $425.71, again directly impacting the Debtor's fresh start.

[9] The only time entries in the Gage Application are from the Trustee as counsel for the Trustee, there are no time entries for paralegal, associate, or other attorney time. Costs are listed under the name of another member of the firm for "online research," but the Court infers that the Trustee conducted such research despite the cost entry not being associated with the name of the Trustee.

[10] All ECF references in Case No. 17-00490 (the "Alexander Case") shall be referred to as "Alexander ECF".

December 12, 2017. Alexander ECF No. 35. On October 10, 2017, Ms. Alexander filed her *Amended Schedules A/B and C, a Summary of Schedules, and a Declaration of Schedules* (Alexander ECF No. 22) which disclosed a "Personal Injury Case (Attorney Watson)" (the "Original PI Claim") valued at $25,000. Ms. Alexander claimed exemptions in the Original PI Claim under § 522(d)(11)(D) for $23,675 and § 522(d)(5) for $1,325. *Id.* at 10. On November 9, 2017, the Trustee filed his *Motion for Order to Extend Time to Object to Amended Exemptions and Notice of Opportunity to Object* (Alexander ECF No. 31) (the "Motion to Extend"), wherein the Trustee sought an extension of time to object to Ms. Alexander's amended exemptions filed on October 10, 2017. The Motion to Extend was granted by Order entered November 29, 2017 (Alexander ECF No. 33), extending the time for the Trustee to object to Ms. Alexander's exemptions through and including December 9, 2017. A month later, on January 13, 2018, the Debtor filed further *Amended Schedules A/B and C, a Summary of Schedules, and a Declaration of Schedules*, which disclosed a "January 11, 2017 Car Accident Personal Injury Case (Attorney Watson)" (the "January PI Claim") and "July 5, 2017 Car Accident (Attorney Watson)" (the "July PI Claim," and together with the Original PI Claim and the January PI Claim, the "Alexander PI Claims"), each of which Ms. Alexander valued at $25,000. Am. Schedules (Schedule A/B), Alexander ECF No. 37. Ms. Alexander claimed exemptions in the January PI Claim under § 522(d)(11)(D) for $23,675 and § 522(d)(5) for $1,325, and an exemption under § 522(d)(5) for the July PI Claim in the amount of $3,508.32. *Id.* at 10.

Six months later, on July 15, 2018, the Trustee requested an Asset Notice, and on July 16, 2018 the Clerk entered a *Notice of Possible Dividends*. Alexander ECF No. 38. On July 30, 2018, the Trustee filed an *Application to Employ* (Alexander ECF No. 40) "himself and his law firm" as counsel. Appl. Employ, Alexander ECF No. 40. In the Application to Employ, the basis for the

need for representation of the Trustee was a generic statement that "[t]he Trustee requires the services of an attorney to assist in analysis and liquidation of assets and to represent the Trustee in any other legal issues which may arise during the administration of the bankruptcy estate." *Id.* at ¶ 3. On August 20, 2018, the Court entered an order granting the Application to Employ. Alexander ECF No. 43.

Roughly a year and nine months later, on May 29, 2020, the Trustee, by himself as counsel, filed a *Motion to Approve Compromise* (Alexander ECF No. 44) (the "Alexander Settlement Motion") requesting court approval of the estate's interest in the pre-petition cause of action arising from Ms. Alexander's automobile accidents.[11] From a review of the Alexander Settlement Motion and the more detailed Notice (Alexander ECF No. 45) thereto, it appears that Ms. Alexander continued to be represented in one or both of the PI Claims by the same Attorney Watson and their law firm, OAU Law Group, LLC, as disclosed on the Debtor's Schedule B (the "OAU Law Group") and not by the Trustee or McCarthy & White. Despite this continued representation and the estate's interest in one or both of the Alexander PI Claims, the Trustee in both his role as trustee and as counsel to the Trustee failed to file an application to employ the OAU Law Group to represent the estate's interest in the Alexander PI Claims. Nevertheless, the OAU Law Group represented Ms. Alexander (and, therefore, the estate) until such time as a settlement offer was proposed in either one or both of the Alexander PI Claims. The settlement set forth in the Alexander Settlement Motion provided a net benefit to Ms. Alexander and the estate of $17,500.00 after payment to the OAU Law Group of a 30 percent contingency fee, costs, and medical liens –

---

[11] Despite the disclosure of the two Alexander PI Claims, nothing filed by the Trustee or counsel indicates to which lawsuit (or both) the settlement was associated. Indeed, the Alexander Settlement Motion merely refers to a "pre-petition cause of action" arising from injuries "sustained in an automobile accident." Alexander Settlement Mot. at 4, ECF No. 44.

all of which were to be paid on behalf of (in part) Ms. Alexander's estate, without this Court's prior approval of their retention.[12] The Alexander Settlement Motion, for the first time elucidated the Trustee's potential objection to Ms. Alexander's amended exemptions, and sought to settle the issue to divide the net proceeds as follows: $6,997.04 to Ms. Alexander and the balance of $10,446.16 to the estate. In other words, the Alexander Settlement Motion sought approval of (i) tacitly, the estate's retroactive employment of the OAU Law Group, (ii) the Alexander PI Claims settlement, and (iii) the agreed distribution between Ms. Alexander's exemptions and the bankruptcy estate.[13]

On June 24, 2020, after expiration of the notice period on the Alexander Settlement Motion, and without objection or hearing, the Court entered its *Order Approving Compromise* (Alexander ECF No. 48), which approved the $30,000 gross settlement, the disbursement to the OAU Law Group of their contingency fee (and tacitly the retroactive employment thereof to represent the estate), Ms. Alexander's $6,997.04 compromised exemption and distribution thereof, and the payment of the balance to the Trustee on behalf of the estate. After entry of the June 24, 2020 order, nothing further happened this case for thirteen months until July 1, 2021, when the Trustee filed the Alexander TFR and Alexander Application for compensation for the Trustee and McCarthy & White. Alexander TFR, ECF No. 49; Alexander Appl., Alexander ECF No. 50.

---

[12] The Court notes that there has been no issue raised to the value and extent of the OAU Law Group's services or results in this case. The Court also acknowledges that the timing/lack of employment application cannot be relitigated due to res judicata, however, this information is necessary to evaluate the value McCarthy & White provided to the estate as counsel and the extent of the fees already incurred by the estate by litigation counsel.

[13] The Alexander Settlement Motion characterizes the OAU Law Group as the "Debtor's litigation counsel," but as noted previously, upon the filing of the first Amended Schedules and until the Alexander PI Claims were either (i) properly exempted by the Debtor or (ii) abandoned by the Trustee, it remained property of the Debtor's estate and not property of the Debtor. 11 U.S.C. § 541(a).

The Alexander TFR discloses that the Trustee received a total of $30,000.00 into the estate, of which $12,556.80 was immediately paid to the OAU Law Group, a further $6,997.04 was paid to Ms. Alexander as exempt funds, and the remaining amount was held by the Trustee over the next twelve months until the filing of the Alexander TFR. As of the filing of the Alexander TFR, there remained approximately $10,290.67 in the Trustee's account at Mechanics Bank. The Alexander Application seeks payment of $2,000.00 in fees and expenses to McCarthy and White, reduced from $4,477.50 "to permit distribution to priority claim." Following the distribution of the Trustee's commission and expenses, approximately $5,167.87 remains for distribution to the Debtor's priority creditor, the Internal Revenue Service.

On October 22, 2021, after an independent review of the Alexander TFR, Alexander Application, and supporting documentation, the Court entered the First Alexander Order, which outlined the Court's concerns with the Alexander Application and set a hearing thereon for November 4, 2021. Despite the legal questions raised in the First Alexander Order, the Trustee did not file a written response to the order, instead appearing at the Hearing and offering solely legal argument and no further evidence other than his statements of opinion to the Court. No further evidence as to the scope, necessity, or appropriateness of the services was offered by the Trustee. Nor did the Trustee address any specific line item or task performed. At the conclusion of the Hearing, the Court provided the Trustee with additional time to file a brief and/or evidence in support of the compensation requested in the Alexander Application. On December 8, 2021, the Trustee filed his *Support Document* (Alexander ECF No. 59), which once again addressed the issues of compensation for trustee's counsel in general but did not address or otherwise provide any specific justification, evidence, or further detail(s) as to the time entries in the Alexander Application. Thus, in considering whether to approve the time requested in the Alexander

Application, the only evidence the Court has as to the appropriateness of the time expended is the invoice attached as part of the Alexander TFR and the docket of Ms. Alexander's case.

### i.      The Alexander Application

Despite the only filing on the docket by McCarthy & White in this matter being the Alexander Settlement Motion, the Trustee in his role as counsel for the Trustee at McCarthy & White, additionally seeks approval of compensation in the amount of $4,477.50, though indicates that they will "accept" $2,000.00 in satisfaction of the services. Even with the payment of over $10,000.00 in fees to the OAU Law Group as "litigation counsel" for the estate and Ms. Alexander on a contingency fee in the PI Claims (the only asset in this case), McCarthy & White indicates that it provided services in the following categories: correspondence with litigation counsel and addressing "the legal issues involved in attempting to liquidate the estate's interest in Debtor's pre-petition cause of action for injuries sustained in an auto accident." Alexander Appl., Alexander ECF No. 49-2. The Court notes that the Alexander Application does not address how the request satisfies the legal standard for approval of compensation to McCarthy & White nor whether the services for which compensation is requested were "actual, necessary services" to the estate by an attorney as required by § 330(a)(1). If the fees are approved as requested, the only distributions in this case will be to the Trustee, McCarthy & White, and an approximately $5,167.87 or 67 percent distribution on an otherwise nondischargeable claim of the Internal Revenue Service. Therefore, Alexander's remaining liability on the priority claim, and thus the diminution of her fresh start, is directly increased by the amounts paid to counsel for the Trustee.[14]

---

[14] Further, the Trustee's delay in filing his Alexander TFR resulted in monthly bank fees from August 2020 through May 2021 of $155.49, again directly impacting the Debtor's fresh start. This does not include the bank fees in the time this matter sat on the Court's docket before a case administrator uploaded the Order on the Trustee's Alexander TFR in October 2021.

The Alexander Application contains billing record exhibits including sixteen time entries for which the Trustee seeks payment for acting as his own counsel. The Alexander time entries are detailed in Appendix C attached hereto, which includes the original information included in the Gage Application. Of these sixteen time entries, twelve relate solely to correspondence with OAU Law Group and Ms. Alexander's bankruptcy counsel concerning the impact of settlement of the PI Claims on the bankruptcy estate for which legal expertise was not required. *See* Alexander Appl., Alexander ECF No. 49-2. As more fully set forth in Appendix D, twelve of the time entries contain descriptions and services for which clearly fall under the statutorily required duties of a chapter 7 trustee.

## II.    Discussion

### a.  Introduction

Chapter 7 trustees play an integral role in the administration of the vast majority of cases filed under the Bankruptcy Code. In most cases where there are no assets for distribution, the chapter 7 trustee's compensation is limited to a statutory flat fee of $60, and as a result of the Bankruptcy Administration Improvement Act of 2020 (BAIA) potentially another $60. Pub. L. No. 116-325. However, at times, a chapter 7 case does result in an asset distribution and, accordingly, higher compensation for the chapter 7 trustee. *See* 11 U.S.C. § 326(a) (establishing presumptive reasonable compensation for chapter 7 trustees based upon value of assets administered). Nevertheless, the Court is well aware that, in general, serving as a chapter 7 trustee does not have a guaranteed income stream equal to the work required to fully, competently, and completely discharge the duties of the position. *See* 11 U.S.C. § 704 (setting forth the statutory duties of a chapter 7 trustee). The same is true for counsel for a chapter 7 trustee. By the very nature of chapter 7, attorneys who represent chapter 7 trustees (whether they are retained on an

hourly basis or a contingency fee basis) are "betting" on the estate having assets to pay their fees. Without assets, no matter what services are rendered, the attorney has a client who by definition has "no assets" to pay for services rendered. Despite the financial risks, the bankruptcy system is only enhanced when experienced and qualified professionals agree to serve as chapter 7 trustees and/or counsel for chapter 7 trustees. It is with these general principals in mind and recognition of the benefits of the service to the bankruptcy system rendered by chapter 7 trustees and their attorneys that the Court considers the Applications.

**b. Compensation and Employment of a Trustee and Professionals**

**i. Chapter 7 Trustee's Role and Duties**

Section 704 of the Bankruptcy Code sets forth the basic statutory duties of a chapter 7 trustee. *See* 11 U.S.C. § 704. Among the duties outlined by § 704 are to "collect and reduce to money the property of the estate for which the trustee serves," "be accountable for all property received," and "investigate the financial affairs of the debtor." 11 U.S.C. §§ 704(a)(1), (2), & (4). The statutory duties of § 704 are more fully elucidated by handbooks and supplements developed and maintained by the Office of the United States Trustee and provided to all members of the chapter 7 trustee panel. *See, e.g.,* U.S. Dep't of Justice, Executive Office for the United States Trustee, Handbook for Chapter 7 Trustees (Oct. 15, 2021). Moreover, the extent, scope, and details of a chapter 7 trustee's obligations once appointed as interim trustee for a case were recently thoroughly detailed by the Fifth Circuit in *Sylvester v. Chaffe McCall, L.L.P. (In re Sylvester)*, 23 F.4th 543 (5th Cir. 2022) and the United States Bankruptcy Court for the Northern District of Georgia in *In re McConnell*, Case No. 19-67128-PWB, 2021 Bankr. Lexis 163 at *10 (Bankr. N.D. Ga. Jan. 4, 2021), *aff'd in part, rev'd in part*, *Gordon v. McConnell*, Case No. 1:21-cv-304-AT (N.D. Ga. March 11, 2022), which while not controlling in this District, the Court finds highly

persuasive. Each decision contains a thorough evaluation of the obligations and standards for chapter 7 trustees and their counsel. The Trustee's administration of the estates and corresponding requests for approval of his statutory commissions requested in these cases is not at issue. However, a clear definition and understanding of the duties and scope of actions to be performed by a chapter 7 trustee are important in the consideration of whether the services rendered by counsel for a chapter 7 trustee are appropriately compensable under § 330, particularly in this case where the Trustee and counsel are the same person.

### ii.    Trustee's Employment of Professionals

Each of a chapter 7 trustee's statutory duties must be performed by the chapter 7 trustee themselves, but the trustee may hire professionals to assist in executing such duties where professional expertise is required. *See In re Peterson*, 566 B.R. 179, 189–90 (Bankr. M.D. Tenn. 2017). Employment of counsel for a chapter 7 trustee requires approval by the court and the trustee seeking to employ counsel must demonstrate the disinterestedness of said counsel. *See* 11 U.S.C. § 327. Once employment is approved, the presence of counsel for a trustee does not change the mandatory nature of the statutory duties to be performed solely by the trustee – the mere employment of counsel does not make such duties delegable. *In re Computer Learning Ctrs*, 272 B.R. 897, 903-04 (Bankr. E.D. Va. 2001). Counsel's role is to assist the trustee with their professional expertise to complete the trustee's statutory duties, but at all times the trustee retains their statutory role. *In re King*, 546 B.R. 682, 697 (Bankr. S.D. Tex. 2016); *In re Stevens*, 407 B.R. 303, 308 (Bankr. N.D. Ill. 2009); *In re Computer Learning Ctrs*, 272 B.R. at 904; *In re McKenna*, 93 B.R. 238, 241 (Bankr. E.D. Cal. 1988); *In re Crutcher Transfer Line, Inc.*, 20 B.R. 705, 711 (Bankr. W.D. Ky. 1982); *In re Auto-Train Corp.*, 15 B.R. 160, 161 (Bankr. D.D.C 1981).

The nature of the responsibilities imposed by § 704 often results in a chapter 7 trustee being

a lawyer themselves. When a trustee seeks to employ themselves or their own law firm to serve as counsel to the trustee, the situation may be further complicated. *In re McConnell*, 2021 Bankr. 163 at *11-12. A chapter 7 trustee may employ the trustee's own firm "if such authorization is in the best interest of the estate,"[15] however, such employment has become disfavored by the courts over time. 11 U.S.C. § 327(d); *see In re Wolfson*, 575 B.R. 522, 524-25 (Bankr. D. Colo. 2017); *In re Peterson*, 566 B.R. 179, 196 (Bankr. M.D. Tenn. 2017); *In re Edwards*, 510 B.R. 554, 560 (Bankr. S.D. Tex. 2014); *In re Stevens*, 407 B.R. at 308; *In re Jackson*, 484 B.R. 141, 157 (Bankr. S.D. Tex. 2012); *In re Interamericas Ltd.*, 321 B.R. 830, 834 (Bankr. S.D. Tex. 2005); *In re Santoro Excavating, Inc.*, 56 B.R. 546, 552 (Bankr. S.D.N.Y. 1986) ("A court must be especially circumspect in those cases where the trustee also performs legal services for the estate."). Essentially, "[t]here is no question that a trustee may serve as the attorney for the trustee under Section 327(d), but the attorney for the trustee cannot be compensated for administering the estate under Section 704." *In re Lexington Hearth Lamp & Leisure, LLC.*, 402 B.R. 135, 141–42 (Bankr. M.D.N.C. 2009) (internal citations omitted). Trustees who decide to hire themselves as counsel, as the Trustee here chose to do, must ensure that they are properly demarcating between time as counsel for the trustee and time as trustee. *U.S. v. Freeland (In re Spungen)*, 168 B.R. 373, 377 (N.D. Ind. 1993); *see also In re McConnell*, 2021 Bankr. Lexis 163 at *10. The proper demarcation of time is the issue in these cases.

### iii.    Compensation for Trustee and Trustee's Professionals

Under § 330(a)(1), a court may award "reasonable compensation for actual, necessary services" as more fully set forth under § 326 (trustee compensation) and § 328 (compensation of

---

[15] The "best interests of the estate" typically involves economic savings and efficiencies for the estate. *See In re Bird*, 577 B.R. 365, 374 (10th Cir. B.A.P. 2017).

professionals). However, a court may only approve compensation for those services and in such amounts appropriate for each role—that of trustee or trustee professional. Thus, § 330(a) limits allowable compensation to fees only for "necessary services." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 131 (2015) (holding that § 330(a) "does not authorize courts to award 'reasonable compensation' *simpliciter*, but 'reasonable compensation for actual, necessary services rendered by'" the relevant professional). While the Bankruptcy Code does not explicitly define what constitutes a "necessary service" under § 330 for trustee professionals, courts have clarified that the phrase should be narrowly defined as "services that are 'necessary' because a trustee could not perform them without the professional's specific expertise." *In re Sylvester*, 23 F.4th at 547; *see also In re Yovtcheva*, 590 B.R. 307, 312 (Bankr. E.D. Pa. 2018); *In re Stevens*, 407 B.R. at 308; *In re Lexington Hearth Lamp & Leisure, LLC.*, 402 B.R. at 142 ; *In re LeClair*, 336 B.R. 718, 722 (Bankr. E.D. Va. 2002); *In re Polk*, 215 B.R. 250, 253 (Bankr. M.D. Fla. 1997).

A trustee's firm may not be compensated for the performance of work that is the ordinary and customary responsibility of the trustee. *See In re McConnell*, 2021 Bankr. LEXIS at *11–13. Section 328(b) places a limitation on the appropriate compensation for a professional representing a trustee, allowing fees *only* for services as an attorney for and that benefit the estate, and not for the duties enumerated in § 704. *See Ferrette & Slatter v. United States Tr. (In re Garcia)*, 335 B.R. 717, 725 (9th Cir. B.A.P. 2005) (finding that an attorney is prohibited from receiving compensation for the performance of trustee duties); *United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.)*, 930 F.2d 386, 388 (4th Cir. 1991) (holding that "courts may not compensate an attorney for services statutorily required by the trustee."); *In re Schiff*, 2010 Bankr. LEXIS 2721, at *17-18 (Bankr. S.D.N.Y. 2010) ("An assessment of reasonable billing judgment considers the following: a) is the burden of the probable cost of legal services disproportionately

large in relation to the size of the estate and maximum probable recovery; b) to what extent would

the estate suffer if the services were not rendered; and c) to what extent did the estate benefit from

the services rendered."). Section 328(b) ensures that the estate is not charged for duplicative

services rendered during the course of the administration of the estate. *In re Virissimo*, 354 B.R.

284 (Bankr. D. Nev. 2006). To avoid these policy concerns, it is imperative that a trustee operating

in a dual capacity as trustee and counsel keep detailed and distinct billing records for each role. *In

re Bird*, 577 B.R. at 374. A trustee serving in a dual capacity must exercise careful and considerable

billing discretion when recording, and ultimately seeking approval of, time allocated to

professional services in order to avoid any appearance of duplication or mischaracterization of

charges. *In re J.W. Knapp Co.*, 930 F.2d at 388; *In re Santoro Excavating, Inc.*, 56 B.R. at 552.

Therefore, the Court's "scrutiny of professional fee applications is particularly important when, as

is the case here, a trustee and/or his firm has been authorized to serve as an attorney or accountant

for the estate." *In re Bird*, 577 B.R. 365, 374 (B.A.P. 10th Cir. 2017). It is undisputed that the

Trustee did maintain separate records in this case, but the issue raised in the First Gage Order and

the First Alexander Order is whether the Trustee appropriately categorized his services in such

records.

Where a chapter 7 trustee acts as his own attorney or employs his own firm, it is the burden

of the trustee or his firm to establish entitlement to payment for legal services rendered. *In re King*,

546 B.R. at 697. The trustee operating in a dual capacity has the burden of proof and must provide

evidence, such as billing records, establishing that the services for which he seeks payment fall

outside the scope of a trustee's statutory obligations, and necessitated legal expertise. *See In re

Howard Love Pipeline Supply Co.*, 253 B.R. 781, 792 (Bankr. E.D. Tex. 2000) (citing *In re Holub*,

129 B.R. 293, 296 (Bankr. M.D. Fla. 1991) ("The burden of proof remains upon the trustee-

attorney to demonstrate that any service for which attorney compensation is sought 'cannot be performed practically or lawfully' except by an attorney.")); *In re Garcia*, 335 B.R. at 727 (trustee-attorney applicants must provide detailed billing records demonstrating that the charge is beyond the scope of trustee duties).

The only evidence before the Court on the Applications are the billing records attached to each application and the argument of the Trustee made at the Hearing and in the supplemental memoranda of law filed by the Trustee. Under § 330(a), it is the proponent attorney's burden to justify the compensation of services rendered. *In re New Boston Coke Corp.*, 299 B.R. 432, 438 (Bankr. E.D. Mich. 2003). "To the extent that the trustee-attorney fails to demonstrate the necessity of the legal services or the description of such services improperly lumps legal and trustee services together, attorney compensation for those services will be disallowed." *In re Howard Love*, 253 B.R. at 792. The Trustee has failed to carry his burden to establish the appropriate grounds for approval of the Applications. Where "insufficient explanatory information is provided for determining the precise nature of the services rendered, the court is compelled to determine that the services are not compensable as legal services." *In re Whitney*, 27 B.R. 352, 354 (Bankr. D. Me. 1983). The Court will address each of the Applications in turn.

### iv.    Analysis of the Gage Application

The summary nature of the Gage Application makes it impossible for the Court to conduct an independent review sufficient to determine if any of the requested compensation was for "actual, necessary services" rendered by McCarthy & White necessary for the administration of or beneficial to the completion of this case, and not services that fall within a chapter 7 trustee's statutory duties that may be completed without the assistance of an attorney. *See* 11 U.S.C. §§ 328(b), 330(a)(1)(A), and 330(a)(3)(C). Nothing in the Gage Application or the record herein

contains any support or clarification as to why the services billed as professional time fall outside

the purview of trustee work/trustee duties as identified by the Court in the First Gage Order, and

therefore are compensable under § 330 as compensation to an estate professional. *See* Supp. Doc.,

Gage ECF No. 38. Upon further review by the Court, it is clear that the forty-seven and one partial

time entries detailed in Appendix B fall largely into three categories of trustee duties enumerated

in § 704(a): (1) "collect and reduce to money the property of the estate . . . and close such estate

as expeditiously as is compatible with the best interests of parties in interest;" (4) "investigate the

financial affairs of the debtor," and (9) "make a final report and file a final account of the

administration of the estate with the court and with the United States trustee." 11 U.S.C. §§

704(a)(1), (4), & (9).[16]

Without going line by line herein, it is instructive to review representative time entries in

the Gage Application. First, the time entry for August 1, 2016, for which counsel for the Trustee

billed 0.8 hours ($340.00) for the following services: "review and analysis of email from counsel

and previous emails from counsel regarding resolution of litigation claim." As stated above, this

is the only evidence and information provided by the Applicants regarding the requested

compensation and its alleged nature as "legal." Not only is this entry vague as to which litigation

claim the Trustee reviewed "counsel's" resolution, it is also unclear if the Trustee was

communicating with himself as counsel or, as the Court interprets, with the Ashcraft firm. In

addition, given this interpretation, it supports the Court's conclusion that neither of the Applicants

---

[16] The time in Exhibit B from the Gage Application includes a time entry for March 24, 2016, the day before the application to employ McCarthy & White was filed with the Court. The *Order Granting Application to Employ McCarthy & White as Attorney for the Trustee* does not include any specific date as to when McCarthy & White are deemed to have been employed by the Trustee, nor does the Gage Application itself speak to such detail. Gage ECF Nos. 28 & 29. Even if these services were not identified as non-compensable trustee duties, they would also be non-compensable as services rendered prior to the employment of counsel.

provided legal services in the resolution of the PI Claim, but merely filed the Gage Settlement

Motion requesting this Court's approval of the resolution reached by the Ashcraft firm.

Furthermore, the evaluation of settlement terms, absent evidence of the need independent legal

analysis not performed by litigation counsel, falls squarely within the Trustee's ministerial duty to

"collect and reduce to money property of the estate." 11 U.S.C. § 704(a)(1); *see also In re*

*Lexington Hearth Lamp*, 402 B.R. at 144–45 (finding that time entries for services falling under

"Reviewing the Debtor's Records" and "Investigating Estate Property" were trustee duties and

therefore noncompensable).

Second, the time entry for December 6, 2019 for 1.0 hours ($450.00) seeks compensation

for services described as "preparation of email to debtor counsel re exemptions; preparation of

email request to litigation counsel for documents and information." Once again, beyond the time

description, the Applicants have provided no further detail or evidence explaining what aspect of

the services contained therein necessitated legal expertise or why such services were anything

other than the completion of the Trustee's statutory duty to investigate the financial affairs of the

debtor and collect and reduce to money property of the estate. 11 U.S.C. § 704(a)(1) & (4).

The foregoing are two examples of the Court's exhaustive examination of the record herein

and the fifty entries in the Gage Application. Based upon a consideration of the whole (albeit scant)

record, the Court finds the following time entries are compensable:

| Date | Status | Duration | Rate | Amount |
|---|---|---|---|---|
| 2/16/2020 | ~~review and analysis of parties' correspondence and pleadings;~~ work on preparing draft of motion to approve compromise and notice of opportunity to object; preparation of email to debtor's | 2.0 [0.5][17] | $450.00 | $900.00 [$225.00] |

---

[17] The applicable time entry block billed for multiple services, some of which were trustee duties. Because the Trustee did not offer additional evidence demarcating between trustee duties and attorney services in this entry, the Court will grant compensation for 2.0 hours of attorney time and deny the remaining 0.5 hours as trustee time.

| | | | | |
|---|---|---|---|---|
| | counsel forwarding draft copies of papers; review response from debtor's counsel | | | |
| 2/22/2020 | preparation of email to p.i. counsel attaching copies of proposed compromise motion, notice of opportunity and order with explanation of requirements for filing and service | 0.75 | $450.00 | $337.50 |
| 2/26/2020 | review and analysis of email and attachment from p.i. counsel notifying of additional legal costs incurred by counsel in class action that require amendment to papers prior to filing; revisions to papers to include costs | 0.7 | $450.00 | $315.00 |
| 5/5/2021 | preparation of fee application | 1.7 | $450.00 | $765.00 |
| | **TOTAL** | **5.15** | | **$2,317.50** |

Each of the tasks contained in these entries required the services of an attorney and are approved under § 330. The balance of the compensation requested in the Gage Application and detailed in Exhibit B of $16,828.50 is denied.

v.      **Analysis of the Alexander Application**

The Alexander Application and supplemental memorandum, much like the Gage Application, does not contain any supporting documentation or authority indicating why the services contained therein are compensable under § 330 and not within the statutory duties of a trustee. *See* Alexander Appl., Alexander ECF No. 49-2. The twelve of the time entries in the Alexander Application, are related to email correspondence with Alexander's bankruptcy counsel and the OAU Law Group regarding Alexander's PI Claims and the associated exemption issues. Correspondence with a debtor's counsel, whether bankruptcy or litigation counsel, decidedly does not require professional expertise beyond that of a panel trustee and therefore cannot be compensated as attorney time. *See In re King*, 546 B.R. at 698-99 (citing *In re Butterbaugh*, 135 B.R. 507, 509 (Bankr. N.D. Ohio 1991) and *In re Kusler*, 224 B.R. 180, 186 (Bankr. N.D. Okla. 1998)). Absent evidence showing a need for independent legal analysis, all time entries for

corresponding with counsel and review of previous emails related to the Alexander PI Claims, fall

under the purview of § 704(a) as duties of the Trustee. *In re Yovtcheva*, 590 B.R. at 315.

Once again, it is instructive to analyze representative time entries in the Alexander

Application without going through each entry. In the Alexander Case, counsel for the Trustee

billed 1.5 hours ($675.00) on May 22, 2020 for services described as "review and analysis of prior

emails of bankruptcy counsel and p.i. counsel; review and analysis of proposal to settle and manner

of acceptance; preparation of email to counsel regarding settlement" without any further evidence

or detail identifying the legal nature of these services. Indeed, this entry contains services related

solely to communication with the OAU Firm and Ms. Alexander's counsel regarding the estate's

only asset, directly within the Trustee's duties to "collect and reduce to money property of the

estate." 11 U.S.C. § 704(a)(1). The same analysis applies to the December 9, 2018 time entry

seeking compensation for 0.5 hours ($225.00) for services designated as "review debtor counsel

response to estate email about settlement; preparation of follow up email explaining further and

seeking clarification of debtor counsel's acceptance of settlement proposal," a settlement proposal

the Court notes apparently was not ultimately pursued or accepted, without any further clarification

or information from the Trustee as to why or how such services required legal expertise. *Id.* The

ultimate settlement in the Alexander case was not reached until almost 18 months later in May

2020.

Similar to the Gage Application, these two exemplary time records demonstrate the

extensive review undertaken by the Court in assessing the Alexander Application. Based upon a

complete review of the record in the Alexander case, the Court finds that the following four time

entries are compensable, as modified:

| Date | Status | Time | Rate | Amount |
|---|---|---|---|---|
| 5/24/2020 | review prior emails on settlement; preparation of motion to compromise, notice of opportunity to object certificate of service and proposed order | 1.3 | $450.00 | $585.00 |
| 5/25/2020 | review and revise notice of compromise; forward draft compromise papers to both counsel for review | 0.7 | $450.00 | $315.00 |
| 5/26/2020 | multiple email exchanges with bankruptcy counsel and with p.i. counsel to obtain sign offs on compromise papers from each | 0.4 | $225.00 | $90.00 |
| 5/31/2021 | work on preparation of application for legal fees | 1 | $450.00 | $450.00 |
| | **TOTAL** | **3.4** | | **$1,440.00** |

The time entry on May 26, 2020 contains services rendered and billed at the full rate of counsel that could and should have been rendered by a paraprofessional, associate, or otherwise billed to the estate at a billing rate lower than the full attorney hourly rate. *See In re Rachal*, No. 19-00197-ELG, at 18-19 (Bankr. D.D.C. 2021), ECF No. 122; *see also Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 341 (D.D.C. 2015) ("As a general matter, clerical and administrative services amount to nonbillable overhead. . . . [S]everal courts in this District have adopted [a] middle-ground approach . . . by awarding solo practitioners and small-firm attorneys' fees for clerical work at a reduced rate"); *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011) (noting an hourly rate for clerical services at a fraction of those for legal services). With this modification, each of the tasks contained in these entries are approved under § 330 in the total amount of $1,440.00.

Similar to the Gage Application, neither the Trustee's Support Document nor the argument offered at the Hearing provided any further clarity or evidence in support of the Trustee's position that the services in Exhibit D are compensable under § 330 as identified by the Court in the First Alexander Order. Therefore, the Court finds that the Trustee has also failed to meet his burden of

proof as to the balance of compensation requested in the Alexander Application. *See In re New Boston Coke Corp.*, 299 B.R. at 438 (holding that is the onus of the proponent filing an application for compensation to establish that he is entitled to the compensation requested therein.); *In re Lexington Hearth Lamp*, 402 B.R. at 141 ("If an attorney maintains that he should be compensated for a particular service, then the attorney must describe the service and the complexity of the matter in sufficient detail so that the court can determine on the face of the fee application that the task required the use of a professional."). Accordingly, the balance of the time listed in Exhibit D for which the Trustee seeks compensation in the Alexander Application in the amount of $3,037 is not compensable and will be denied.

### III.    Conclusion

Therefore, for the reasons stated herein, it is hereby ORDERED that the Gage Application and Alexander Application are each DENIED in part and GRANTED in part as follows:

1)    Compensation in the amount of $2,317.50 for the Gage Application is approved as reasonable compensation for actual, necessary services under 11 U.S.C. § 330. The balance of fees in the amount of $16,960.32 requested in the Gage Application are denied.

2)    Compensation in the amount of $1,440.00 for the Alexander Application is approved as reasonable compensation for actual, necessary services under 11 U.S.C. § 330. The balance of fees requested in the Alexander Application in the amount of $3,037.50 are denied.

3)    Approval of the Gage TFR and Alexander TFR is DENIED.

4)    The Trustee is instructed to amend the Gage TFR and Alexander TFR consistent with the legal conclusions stated in this Memorandum Opinion.

[Signed and dated above.]

Service to: the Debtor; recipients of electronic notice.

**Appendix A**

**List of All Time Entries Submitted by the Trustee in the Gage Case**

| Date | Status | Duration | Rate | Amount |
|------|--------|----------|------|--------|
| 3/24/2016 | research, review and analysis of Texas USDC action for potential liability and developments in case; preparation of email to debtor p.i. counsel re interest in asset; prep of application | 1.5 | $425.00 | $637.50 |
| 3/31/2016 | preparation of follow up email to p.i. counsel regarding prior inquiry; review response from p.i. counsel; preparation of additional inquiry to counsel regarding possible scheduling of trial date, discovery or negotiations regarding settlement. | 0.45 | $425.00 | $191.25 |
| 8/1/2016 | review and analysis of email from counsel and previous emails from counsel regarding resolution of litigation claim | 0.8 | $425.00 | $340.00 |
| 2/20/2017 | review prior emails with p.i. counsel; preparation of another follow up email to p.i. counsel reviewing history of prior emails and requesting update on debtor's claim for recovery. | 0.4 | $450.00 | $180.00 |
| 7/12/2017 | preparation of email to p.i. counsel raising issue of size of other verdicts in the hip implant cases and requesting views on impact of those upon debtor' s case. | 0.3 | $450.00 | $135.00 |
| 7/24/2017 | review email from p.i. counsel re status of case in light of other verdicts in case; research issues re: claims against the estate; review issues from prior emails with counsel | 0.75 | $450.00 | $337.50 |
| 7/25/2017 | preparation of email to p.i. counsel re filings | 0.3 | $450.00 | $135.00 |
| 7/27/2017 | review correspondence from p.i. counsel; preparation of email explaining estate's position and suggestions for going forward with respect to participation in litigation | 0.75 | $450.00 | $337.50 |
| 2/1/2018 | preparation of follow up email to p.i. counsel regarding status of litigation; review response 2/5. | 0.4 | $450.00 | $180.00 |
| 7/15/2018 | preparation of email to p.i. counsel to inquiring into status of the debtor's suit | 0.2 | $450.00 | $90.00 |
| 3/31/2019 | preparation of follow up email to p.i. counsel re status of proceedings | 0.2 | $450.00 | $90.00 |
| 4/19/2019 | continued attempts to contact personal injury | 1.1 | $450.00 | $495.00 |

| | counsel again without success. preparation of extended email to lead counsel re estate's interest and status of bankruptcy and need to discuss p.i. proceedings; review of response from lead partner. | | | |
| 4/22/2019 | review and analysis of email from p.i. counsel disclosing that proceedings are beginning move into settlement discussions with the various parties | 0.3 | $450.00 | $135.00 |
| 6/25/2019 | review and analysis of prior correspondence with p.i. counsel and court dockets; preparation of email to counsel going over status of relationship, requirements of code and rules and need for negotiated agreement. | 1.5 | $450.00 | $675.00 |
| 8/19/2019 | tcw Parfitt's office and message; text received from parfitt re conference call planned; texts to Parfitt; preparation of email to Parfitt re same. | 0.4 | $450.00 | $180.00 |
| 8/21/2019 | review email re suggested conference call; preparation of email re availability; review email response and reply with time set .4; review and analysis of prior emails and filings regarding cause of action ..5; conference call with litigation counsel for debtor .4; review schedules and preparation of email to bankruptcy counsel regarding status of litigation and estate's position .5 | 1.8 | $450.00 | $810.00 |
| 8/23/2019 | preparation of email to p.i. counsel regarding contact with debtor's counsel; review response from counsel re attempts to contact debtor | 0.3 | $450.00 | $135.00 |
| 8/26/2019 | preparation of follow up email to debtor's bankruptcy counsel re need to have all parties as part of resolution | 0.15 | $450.00 | $67.50 |
| 8/30/2019 | review and analysis of email from p.i. counsel stating that both p.i. and bankruptcy counsel agree that it is premature to resolve the respective interests in the cause of action | 0.3 | $450.00 | $135.00 |
| 9/2/2019 | exchange emails with debtor's counsel re need to reach resolution of respective interests and belief that resolution is somehow premature. | 0.3 | $450.00 | $135.00 |
| 9/7/2019 | research case law and precedent on standing, listing of assets and judicial estoppel | 1 | $450.00 | $450.00 |
| 10/20/2019 | review issues re scheduling of assets and exemptions; review and analysis of case law .75; preparation of email to debtor's bankruptcy counsel re ownership and | 1.75 | $450.00 | $787.50 |

| | | | | |
|---|---|---|---|---|
| | responsibility of parties regarding negotiations .75; review response from litigations counsel; review response from debtor's counsel. .25 | | | |
| 11/5/2019 | review and analysis of email from p.i. counsel stating he received settlement offer and the conditions put on the offer | 0.3 | $450.00 | $135.00 |
| 11/7/2019 | preparation of email to p.i. counsel requesting information about elements of settlement offer. | 0.4 | $450.00 | $180.00 |
| 11/13/2019 | review and analysis of email from litigation counsel re sharing of information; preparation of email to debtor's counsel re problems raised by other counsel and need for discussions to avoid contested proceedings | 1.5 | $450.00 | $675.00 |
| 11/20/2019 | review and analysis of emails from counsel re lawsuit and settlement; respond to email re conference call; review and analysis of prior identification and assessment of settlement issues | 1 | $450.00 | $450.00 |
| 11/21/2019 | review and analysis of issues re settlement based on prior emails with counsel .5; tcw lee extended about settlement and, need to resolve certain issues or factors first prior to overall resolution .9; lee to amend exemptions first | 1.4 | $450.00 | $630.00 |
| 11/26/2019 | review of emails from litigation counsel; preparation of email to debtor's counsel re need to specify what exemption and amount debtor will claim; preparation of email to litigation counsel regarding documents parties need to review | 1.3 | $450.00 | $585.00 |
| 12/1/2019 | preparation of emails to debtor's litigation counsels and preparation of email to bankruptcy counsel regarding settlement offer and need for more information; review and analysis of responses. | 1 | $450.00 | $450.00 |
| 12/5/2019 | review and analysis of case management orders USDC ND Tex. 1.; legal research case law on § 522(d)(11)(d) 1.5 | 2.5 | $450.00 | $1,125.00 |
| 12/6/2019 | preparation of email to debtor counsel re exemptions; preparation of email request to litigation counsel for documents and information | 1 | $450.00 | $450.00 |
| 12/15/2019 | review and analysis of email and position of litigation counsel on access to information; work on preparation of response | 1 | $450.00 | $450.00 |

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 1/14/2020 | review prior emails and review docket; preparation of email to debtor's counsel | 0.25 | $450.00 | $112.50 |
| 1/22/2020 | review email from litigation counsel; prepare email to litigation counsel; research issue of exemption of personal injury award under federal exemptions and case law; tcw extended debtor's counsel re litigation and compromise | 1.15 | $450.00 | $517.50 |
| 1/23/2020 | continued review and analysis of case law on personal injury exemptions 1.75; preparation of email analysis and questions about claim to debtor's counsel 1 | 2.75 | $450.00 | $1,237.50 |
| 1/24/2020 | further review and analysis of email from p.i. counsel raising additional questions regarding resolution of relative interests of debtor vs. estate and requesting response to prior email; preparation of response to p.i. counsel; preparation of email to debtor's counsel re need for response to analysis of debtor's ability to exempt or other resolution of exemption issue; review and analysis of response from debtor's counsel disputing limit on exemption and proposing compromise; preparation of response to counsel email accepting proposed compromise and need for court approval | 2 | $450.00 | $900.00 |
| 1/25/2020 | preparation of email to p.i. counsel explaining compromise reached with debtor on exemption and basis for trustee accepting defendants' settlement offer on p.i. litigation; review response from p.i. counsel | 0.5 | $450.00 | $225.00 |
| 2/16/2020 | review and analysis of parties' correspondence and pleadings; work on preparing draft of motion to approve compromise and notice of opportunity to object; preparation of email to debtor's counsel forwarding draft copies of papers; review response from debtor's counsel | 2.5 | $450.00 | $1,125.00 |
| 2/19/2020 | multiple emails with counsel re compromise and implementation | 0.5 | $450.00 | $225.00 |
| 2/22/2020 | preparation of email to p.i. counsel attaching copies of proposed compromise motion, notice of opportunity and order with explanation of requirements for filing and service | 0.75 | $450.00 | $337.50 |
| 2/24/2020 | preparation of follow up email to p.i. counsel re filing of papers | 0.15 | $450.00 | $67.50 |
| 2/25/2020 | exchange emails with p.i. counsel re | 0.25 | $450.00 | $112.50 |

| | | | | |
|---|---|---|---|---|
| | anticipated signing and filing of compromise papers | | | |
| 2/26/2020 | review and analysis of email and attachment from p.i. counsel notifying of additional legal costs incurred by counsel in class action that require amendment to papers prior to filing; revisions to papers to include costs | 0.7 | $450.00 | $315.00 |
| 2/27/2020 | preparation of follow up email to bankruptcy counsel for debtor and p.i. counsel attaching revised papers and advising of intent to file in absence of additional comments | 0.5 | $450.00 | $225.00 |
| 2/28/2020 | contact noticing service and arrange for mailing of notice and file papers with court | 0.75 | $450.00 | $337.50 |
| 3/29/2020 | preparation of email to p.i. counsel forwarding copy of orders and inquiring about disbursement of funds | 0.15 | $450.00 | $67.50 |
| 3/30/2020 | review email from p.i. counsel regarding anticipated disbursement of funds | 0.1 | $450.00 | $45.00 |
| 4/16/2020 | review follow up email from p.i. counsel re anticipated disbursement of funds | 0.2 | $450.00 | $90.00 |
| 4/17/2020 | review additional email from p.i. counsel regarding method of disbursement of funds by wire; preparation of email to p.i. counsel forwarding form for wire instructions for disbursements | 0.5 | $450.00 | $225.00 |
| 5/31/2020 | review emails from debtor's counsel and p.i. counsel regarding completing disbursements to debtor; preparation of email to debtor counsel re disbursement | 0.45 | $450.00 | $202.50 |
| 6/12/2020 | review email from debtor counsel re disbursement of funds; preparation of email to debtor counsel advising of forwarding funds and confirming address to be sent; review debtor counsel email with address | 0.5 | $450.00 | $225.00 |
| 5/5/2021 | preparation of fee application | 1.7 | $450.00 | $765.00 |
| | | | | $19,146.25 |

**Appendix B**

**List of Time Entries Disallowed as Trustee Duties**

| Date | Status | Duration | Rate | Amount |
|---|---|---|---|---|
| 3/24/2016 | research, review and analysis of Texas USDC action for potential liability and developments in case; preparation of email to debtor p.i. counsel re interest in asset; prep of application | 1.5 | $425.00 | $637.50 |
| 3/31/2016 | preparation of follow up email to p.i. counsel regarding prior inquiry; review response from p.i. counsel; preparation of additional inquiry to counsel regarding possible scheduling of trial date, discovery or negotiations regarding settlement. | 0.45 | $425.00 | $191.25 |
| 8/1/2016 | review and analysis of email from counsel and previous emails from counsel regarding resolution of litigation claim | 0.8 | $425.00 | $340.00 |
| 2/20/2017 | review prior emails with p.i. counsel; preparation of another follow up email to p.i. counsel reviewing history of prior emails and requesting update on debtor's claim for recovery. | 0.4 | $450.00 | $180.00 |
| 7/12/2017 | preparation of email to p.i. counsel raising issue of size of other verdicts in the hip implant cases and requesting views on impact of those upon debtor' s case. | 0.3 | $450.00 | $135.00 |
| 7/24/2017 | review email from p.i. counsel re status of case in light of other verdicts in case; research issues re: claims against the estate; review issues from prior emails with counsel | 0.75 | $450.00 | $337.50 |
| 7/25/2017 | preparation of email to p.i. counsel re filings | 0.3 | $450.00 | $135.00 |
| 7/27/2017 | review correspondence from p.i. counsel; preparation of email explaining estate's position and suggestions for going forward with respect to participation in litigation | 0.75 | $450.00 | $337.50 |
| 2/1/2018 | preparation of follow up email to p.i. counsel regarding status of litigation; review response 2/5. | 0.4 | $450.00 | $180.00 |
| 7/15/2018 | preparation of email to p.i. counsel to inquiring into status of the debtor's suit | 0.2 | $450.00 | $90.00 |
| 3/31/2019 | preparation of follow up email to p.i. counsel re status of proceedings | 0.2 | $450.00 | $90.00 |

| | | | | |
|---|---|---|---|---|
| 4/19/2019 | continued attempts to contact personal injury counsel again without success. preparation of extended email to lead counsel re estate's interest and status of bankruptcy and need to discuss p.i. proceedings; review of response from lead partner. | 1.1 | $450.00 | $495.00 |
| 4/22/2019 | review and analysis of email from p.i. counsel disclosing that proceedings are beginning move into settlement discussions with the various parties | 0.3 | $450.00 | $135.00 |
| 6/25/2019 | review and analysis of prior correspondence with p.i. counsel and court dockets; preparation of email to counsel going over status of relationship, requirements of code and rules and need for negotiated agreement. | 1.5 | $450.00 | $675.00 |
| 8/19/2019 | tcw Parfitt's office and message; text received from parfitt re conference call planned; texts to Parfitt; preparation of email to Parfitt re same. | 0.4 | $450.00 | $180.00 |
| 8/21/2019 | review email re suggested conference call; preparation of email re availability; review email response and reply with time set .4; review and analysis of prior emails and filings regarding cause of action ..5; conference call with litigation counsel for debtor .4; review schedules and preparation of email to bankruptcy counsel regarding status of litigation and estate's position .5 | 1.8 | $450.00 | $810.00 |
| 8/23/2019 | preparation of email to p.i. counsel regarding contact with debtor's counsel; review response from counsel re attempts to contact debtor | 0.3 | $450.00 | $135.00 |
| 8/26/2019 | preparation of follow up email to debtor's bankruptcy counsel re need to have all parties as part of resolution | 0.15 | $450.00 | $67.50 |
| 8/30/2019 | review and analysis of email from p.i. counsel stating that both p.i. and bankruptcy counsel agree that it is premature to resolve the respective interests in the cause of action | 0.3 | $450.00 | $135.00 |
| 9/2/2019 | exchange emails with debtor's counsel re need to reach resolution of respective interests and belief that resolution is somehow premature. | 0.3 | $450.00 | $135.00 |
| 9/7/2019 | research case law and precedent on standing, listing of assets and judicial estoppel | 1 | $450.00 | $450.00 |

| | | | | |
|---|---|---|---|---|
| 10/20/2019 | review issues re scheduling of assets and exemptions; review and analysis of case law .75; preparation of email to debtor's bankruptcy counsel re ownership and responsibility of parties regarding negotiations .75; review response from litigations counsel; review response from debtor's counsel. .25 | 1.75 | $450.00 | $787.50 |
| 11/5/2019 | review and analysis of email from p.i. counsel stating he received settlement offer and the conditions put on the offer | 0.3 | $450.00 | $135.00 |
| 11/7/2019 | preparation of email to p.i. counsel requesting information about elements of settlement offer. | 0.4 | $450.00 | $180.00 |
| 11/13/2019 | review and analysis of email from litigation counsel re sharing of information; preparation of email to debtor's counsel re problems raised by other counsel and need for discussions to avoid contested proceedings | 1.5 | $450.00 | $675.00 |
| 11/20/2019 | review and analysis of emails from counsel re lawsuit and settlement; respond to email re conference call; review and analysis of prior identification and assessment of settlement issues | 1 | $450.00 | $450.00 |
| 11/21/2019 | review and analysis of issues re settlement based on prior emails with counsel .5; tcw lee extended about settlement and, need to resolve certain issues or factors first prior to overall resolution .9; lee to amend exemptions first | 1.4 | $450.00 | $630.00 |
| 11/26/2019 | review of emails from litigation counsel; preparation of email to debtor's counsel re need to specify what exemption and amount debtor will claim; preparation of email to litigation counsel regarding documents parties need to review | 1.3 | $450.00 | $585.00 |
| 12/1/2019 | preparation of emails to debtor's litigation counsels and preparation of email to bankruptcy counsel regarding settlement offer and need for more information; review and analysis of responses. | 1 | $450.00 | $450.00 |
| 12/5/2019 | review and analysis of case management orders USDC ND Tex. 1.; legal research case law on § 522(d)(11)(d) 1.5 | 2.5 | $450.00 | $1,125.00 |
| 12/6/2019 | preparation of email to debtor counsel re exemptions; preparation of email request to | 1 | $450.00 | $450.00 |

|  | litigation counsel for documents and information |  |  |  |
|---|---|---|---|---|
| 12/15/2019 | review and analysis of email and position of litigation counsel on access to information; work on preparation of response | 1 | $450.00 | $450.00 |
| 1/14/2020 | review prior emails and review docket; preparation of email to debtor's counsel | 0.25 | $450.00 | $112.50 |
| 1/22/2020 | review email from litigation counsel; prepare email to litigation counsel; research issue of exemption of personal injury award under federal exemptions and case law; tcw extended debtor's counsel re litigation and compromise | 1.15 | $450.00 | $517.50 |
| 1/23/2020 | continued review and analysis of case law on personal injury exemptions 1.75; preparation of email analysis and questions about claim to debtor's counsel 1 | 2.75 | $450.00 | $1,237.50 |
| 1/24/2020 | further review and analysis of email from p.i. counsel raising additional questions regarding resolution of relative interests of debtor vs. estate and requesting response to prior email; preparation of response to p.i. counsel; preparation of email to debtor's counsel re need for response to analysis of debtor's ability to exempt or other resolution of exemption issue; review and analysis of response from debtor's counsel disputing limit on exemption and proposing compromise; preparation of response to counsel email accepting proposed compromise and need for court approval | 2 | $450.00 | $900.00 |
| 1/25/2020 | preparation of email to p.i. counsel explaining compromise reached with debtor on exemption and basis for trustee accepting defendants' settlement offer on p.i. litigation; review response from p.i. counsel | 0.5 | $450.00 | $225.00 |
| 2/16/2020 | review and analysis of parties' correspondence and pleadings; ~~work on preparing draft of motion to approve compromise and notice of opportunity to object; preparation of email to debtor's~~ | 0.5 [2.0][18] | $450.00 | $225.00 [$900.00] |

[18] As noted in the Opinion, this time entry contained mixed services. Due to the lack of evidence and the block billing, the Court allows 2.0 hours of billable attorney time and denies 0.5 hours as indicated herein.

| | | | | |
|---|---|---|---|---|
| | ~~counsel forwarding draft copies of papers; review response from debtor's counsel~~ | | | |
| 2/19/2020 | multiple emails with counsel re compromise and implementation | 0.5 | $450.00 | $225.00 |
| 2/24/2020 | preparation of follow up email to p.i. counsel re filing of papers | 0.15 | $450.00 | $67.50 |
| 2/25/2020 | exchange emails with p.i. counsel re anticipated signing and filing of compromise papers | 0.25 | $450.00 | $112.50 |
| 2/27/2020 | preparation of follow up email to bankruptcy counsel for debtor and p.i. counsel attaching revised papers and advising of intent to file in absence of additional comments | 0.5 | $450.00 | $225.00 |
| 2/28/2020 | contact noticing service and arrange for mailing of notice and file papers with court | 0.75 | $450.00 | $337.50 |
| 3/29/2020 | preparation of email to p.i. counsel forwarding copy of orders and inquiring about disbursement of funds | 0.15 | $450.00 | $67.50 |
| 3/30/2020 | review email from p.i. counsel regarding anticipated disbursement of funds | 0.1 | $450.00 | $45.00 |
| 4/16/2020 | review follow up email from p.i. counsel re anticipated disbursement of funds | 0.2 | $450.00 | $90.00 |
| 4/17/2020 | review additional email from p.i. counsel regarding method of disbursement of funds by wire; preparation of email to p.i. counsel forwarding form for wire instructions for disbursements | 0.5 | $450.00 | $225.00 |
| 5/31/2020 | review emails from debtor's counsel and p.i. counsel regarding completing disbursements to debtor; preparation of email to debtor counsel re disbursement | 0.45 | $450.00 | $202.50 |
| 6/12/2020 | review email from debtor counsel re disbursement of funds; preparation of email to debtor counsel advising of forwarding funds and confirming address to be sent; review debtor counsel email with address | 0.5 | $450.00 | $225.00 |

**Appendix C**

**List of All Time Entries Submitted by the Trustee in the Alexander Case**

| Date | Status | Duration | Rate | Amount |
|---|---|---|---|---|
| 8/22/2018 | preparation of email analysis to personal injury counsel regarding status of exemptions | 0.45 | $450.00 | $202.50 |
| 8/24/2018 | tcw debtor's bankruptcy counsel re settlement and limits of exemptions | 0.25 | $450.00 | $112.50 |
| 11/20/2018 | preparation of follow up email to bankruptcy counsel requesting agreement to resolve on progress of claim exemption issue and requesting status report | 0.4 | $450.00 | $180.00 |
| 11/21/2018 | multiple emails with bankruptcy counsel and p.i. counsel regarding a possible agreement on extent of exemption re cause of action and problem with the proposal from debtor; counter proposal from estate. | 0.4 | $450.00 | $180.00 |
| 12/05/2018 | preparation of follow up email to bankruptcy counsel re proposal to settle the respective interests in the debtor's p.i. auto claim. | 0.3 | $450.00 | $135.00 |
| 12/09/2018 | review debtor counsel response to estate email about settlement; preparation of follow up email explaining further and seeking clarification of debtor counsel's acceptance of settlement proposal. | 0.5 | $450.00 | $225.00 |
| 12/12/2018 | emails with p.i. counsel regarding discovery of lien on cause of action | 0.3 | $450.00 | $135.00 |
| 1/30/2019 | exchange emails with bankruptcy counsel continuing to seek clarification of regarding debtor's acceptance; exchange emails with p.i. counsel regarding demand made on insurance company | 0.5 | $450.00 | $225.00 |
| 3/31/2020 | review forwarded emails with bankruptcy counsel and debtor re potential recoveries in auto accident cause of action. | 0.2 | $450.00 | $90.00 |
| 4/29/2020 | multiple emails (5) with p.i. counsel regarding difficulties in settlement discussions with defendant's insurance company, likelihood of resort to litigation and monitoring progress | 0.5 | $450.00 | $225.00 |
| 5/18/2020 | review and analysis of email from p.i. counsel re insurance company about face and offer to settle for maximum policy limit and p.i. counsel breakdown of proposed distribution of proceeds | 0.6 | $450.00 | $270.00 |

| 5/22/2020 | review and analysis of prior emails of bankruptcy counsel and p.i. counsel; review and analysis of proposal to settle and manner of acceptance; preparation of email to counsel regarding settlement. | 1.5 | $450.00 | $675.00 |
| 5/24/2020 | review prior emails on settlement; preparation of motion to compromise, notice of opportunity to object certificate of service and proposed order | 1.3 | $450.00 | $585.00 |
| 5/25/2020 | review and revise notice of compromise; forward draft compromise papers to both counsel for review | 0.7 | $450.00 | $315.00 |
| 5/26/2020 | multiple email exchanges with bankruptcy counsel and with p.i. counsel to obtain sign offs on compromise papers from each | 0.4 | $450.00 | $180.00 |
| 5/31/2021 | work on preparation of application for legal fees | 1 | $450.00 | $450.00 |
| | | | | $4,477.50 |

## Appendix D

## List of Time Entries Disallowed as Trustee Duties

| Date | Status | Duration | Rate | Amount |
|---|---|---|---|---|
| 8/22/2018 | preparation of email analysis to personal injury counsel regarding status of exemptions | 0.45 | $450.00 | $202.50 |
| 8/24/2018 | tcw debtor's bankruptcy counsel re settlement and limits of exemptions | 0.25 | $450.00 | $112.50 |
| 11/20/2018 | preparation of follow up email to bankruptcy counsel requesting agreement to resolve on progress of claim exemption issue and requesting status report | 0.4 | $450.00 | $180.00 |
| 11/21/2018 | multiple emails with bankruptcy counsel and p.i. counsel regarding a possible agreement on extent of exemption re cause of action and problem with the proposal from debtor; counter proposal from estate. | 0.4 | $450.00 | $180.00 |
| 12/05/2018 | preparation of follow up email to bankruptcy counsel re proposal to settle the respective interests in the debtor's p.i. auto claim. | 0.3 | $450.00 | $135.00 |
| 12/09/2018 | review debtor counsel response to estate email about settlement; preparation of follow up email explaining further and seeking | 0.5 | $450.00 | $225.00 |

| | | | | |
|---|---|---|---|---|
| | clarification of debtor counsel's acceptance of settlement proposal. | | | |
| 12/12/2018 | emails with p.i. counsel regarding discovery of lien on cause of action | 0.3 | $450.00 | $135.00 |
| 1/30/2019 | exchange emails with bankruptcy counsel continuing to seek clarification of regarding debtor's acceptance; exchange emails with p.i. counsel regarding demand made on insurance company | 0.5 | $450.00 | $225.00 |
| 3/31/2020 | review forwarded emails with bankruptcy counsel and debtor re potential recoveries in auto accident cause of action. | 0.2 | $450.00 | $90.00 |
| 4/29/2020 | multiple emails (5) with p.i. counsel regarding difficulties in settlement discussions with defendant's insurance company, likelihood of resort to litigation and monitoring progress | 0.5 | $450.00 | $225.00 |
| 5/18/2020 | review and analysis of email from p.i. counsel re insurance company about face and offer to settle for maximum policy limit and p.i. counsel breakdown of proposed distribution of proceeds | 0.6 | $450.00 | $270.00 |
| 5/22/2020 | review and analysis of prior emails of bankruptcy counsel and p.i. counsel; review and analysis of proposal to settle and manner of acceptance; preparation of email to counsel regarding settlement. | 1.5 | $450.00 | $675.00 |